IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 12, 2018 Session

## DELBERT COLLIER v. LEGENDS PARK LP ET AL.

**Appeal from the Circuit Court for Shelby County
No. CT-001043-16  Felicia Corbin Johnson, Judge**

_____

### No. W2017-02313-COA-R3-CV

_____

This is a personal injury lawsuit.  Plaintiff, while standing on a public street outside of his apartment, owned by Defendants, was approached from behind by an assailant.  The assailant shot Plaintiff in each leg with an assault rifle and proceeded to rob him. Plaintiff sued Defendants for negligence, alleging that Defendants knew or should have known of the foreseeable presence of dangerous persons and that their failure to maintain the property in a safe condition was the direct cause of Plaintiff's injuries.  The trial court granted Defendants' motion for summary judgment on the grounds that Plaintiff presented no proof that Defendants had notice of the assailant's presence or an opportunity to prevent the shooting.  We affirm, although on different grounds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in THOMAS R. FRIERSON, II, and KENNY ARMSTRONG, JJ., joined.

Stephen R. Leffler, Memphis, Tennessee, for the appellant, Delbert Collier.

Taylor A. Cates, Memphis, Tennessee, for the appellees, Legends Park, LP, and Legends Park North Apartments.

### OPINION

#### BACKGROUND AND PROCEDURAL HISTORY

On the night of March 12, 2015, Delbert Collier ("Plaintiff") and his cousin, Kimberly Thompson, were sitting in his car parked on Delmar Lane, a public street located in Memphis, Tennessee, adjacent to the Legends Park North Apartments. Legends Park North Apartments is owned by Legends Park North, L.P. (together,

"Defendants"). At the time of the events leading up to this case, Plaintiff lived in one of the apartments with his then 70-year-old mother. A man, referred to in the record only as "Tim," pulled up in another vehicle alongside Plaintiff and Ms. Johnson. Ms. Johnson then exited the Plaintiff's car and got into Tim's. Plaintiff then got out of his car. At this point a woman, Starlanja Jones, approached him from the rear, holding an assault rifle and demanding money. Plaintiff had several thousand dollars on his person—allegedly proceeds from the settlement of a motor vehicle accident claim—but he told Ms. Jones that the money was in his car. Ms. Jones then shot Plaintiff in each leg to prevent him from following her as she went to his car to retrieve the money. As Ms. Jones searched the vehicle, Plaintiff attempted to hide the money under the wheel well. Ms. Jones returned to Plaintiff to search his pockets. She then got into the car with Ms. Johnson and "Tim," and the three of them drove away from the scene.

Plaintiff sued Defendants on March 11, 2016, claiming that his injuries and damages were the direct and proximate result of Defendants' negligence. In their September 9, 2016 answer, Defendants denied the allegations. Defendants then moved for summary judgment on June 5, 2017, asserting that, because it was undisputed that the shooting in question did not occur on Defendants' premises, Defendants owed no legal duty to Plaintiff. In his response to the motion for summary judgment, Plaintiff claimed that a reasonable jury could find that Defendants failed to implement security measures on the complex's premises commensurate with the dangerous nature of the neighborhood and that the absence of such security allowed Ms. Jones to use Defendants' property to access Plaintiff. According to Plaintiff, as long as a jury could reach these conclusions, summary judgment was not appropriate.

The trial court, however, disagreed with Plaintiff and granted Defendants' motion for summary judgment on October 30, 2017. In its order, the trial court noted that Plaintiff presented no proof on which a jury could find that Defendants had notice of Ms. Jones' presence or an opportunity to prevent the shooting. Without such proof, according to the trial court, it could grant Defendants' motion without considering the question of whether Defendants had a duty to prevent an injury occurring off-premises. Plaintiff timely appealed.

### ISSUE PRESENTED

Plaintiff raises only one issue on appeal, which we repeat from his brief verbatim: Did the Trial Court commit error by granting summary judgment to the premises owner (apartment complex) on the grounds that the premises owner had no duty to the Plaintiff/Appellant when Plaintiff/Appellant suffered a gunshot wound on the sidewalk outside the premises after the third party assailant used the premises to access the location of the assault?

## STANDARD OF REVIEW

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (quoting Tenn. R. Civ. P. 56.04). "We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness." *Id.* "In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* Further:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.

*Id.* at 264.

## DISCUSSION

In his complaint, Plaintiff contended that Defendants' negligence was the direct and proximate cause of Plaintiff's injuries. In advancing this claim, Plaintiff asserted that Defendants breached their duty by failing to provide adequate security for their tenants, residents, and guests.[1] In granting Defendants' motion for summary judgment, however, the trial court stated that Plaintiff presented "no proof on which a jury could find that Defendants had notice of Ms. Jones's presence or an opportunity to prevent the shooting" and that "[w]ithout such proof, the Court can grant Defendants' Motion without even reaching the question of whether Defendants had a duty to prevent an event which occurred off-premises." We affirm the order of the trial court; however, we do so on the basis that Defendants owed no duty to Plaintiff. The fact that the trial court granted summary judgment on different grounds does not mean that its order should be reversed. This Court is permitted to affirm a grant of summary judgment on grounds different from those cited by the trial court. *See Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) ("Although the trial court granted summary judgment on the basis of foreseeability, this Court may affirm the trial court's decision when rendered on different

---

[1] Specifically, Plaintiff argues that Defendants failed to take actions that included, but are not limited to: evicting tenants, residents, and guests who preyed on other tenants and who use and sell drugs; expelling those intruders who engaged in unlawful conduct; installing barriers or other forms of security to limit the access of intruders; warning prospective tenants, residents, and guests of prospective dangers and taking measures to limit such dangers.

grounds."); *see also Bobo v. City of Jackson*, 511 S.W.3d 14, 26 n.14 (Tenn. Ct. App. 2015) ("[W]e are entitled as an appellate court to affirm the entry of summary judgment on grounds that differ from those forming the basis of the trial court's decision.").

The plaintiff in an action for negligence, which is generally defined as the failure to exercise reasonable care, must establish five essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 364 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). The element of duty is "a legal obligation to conform to a reasonable person's standard of care in order to protect against unreasonable risks of harm." *Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013) (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008)). An unreasonable risk of harm arises, creating such legal duty, "if the foreseeability and gravity of harm caused by a defendant's conduct outweighs the burdens placed on a defendant to engage in other conduct that would prevent such harm." *Id.* (citing *McCall*, 913 S.W.2d at 153).

Tennessee courts have consistently found that people "do not ordinarily have a duty to act to protect others from dangers or risks except for those that they themselves have created." *Id.* (quoting *Satterfield*, 266 S.W.3d at 357). Additionally, although Tennessee courts have found that a duty could exist to protect patrons from the criminal acts of third parties occurring *on* a defendant-business's premises, "there appears to exist no precedent for such a duty to a business patron continuing once the patron has left the business premises." *Akridge v. Fathom, Inc.*, No. E2014-00711-COA-R9-CV, 2015 WL 97946, at *5 (Tenn. Ct. App. Jan. 7, 2015). In *Akridge*, this Court declined to extend the duty owed by a premises owner to its customers to include protection from criminal acts occurring off the defendant's property. *See id.* This Court reached a similar conclusion in *Chowbay v. Davis*:

> The record shows that while Defendants were aware Silverado's customers used the vacant parking lot where Davis' assault of Plaintiff occurred, Defendant's neither owned nor controlled the lot, and Plaintiff does not dispute this material fact. Plaintiff, in support of his argument on appeal, cites no Tennessee cases, nor has our research found any, which hold that a property owner or operator owes a duty to its customers to protect them from criminal conduct occurring off defendant's premises . . . . We decline to extend the duty owed by a premises owner or operator to its customers to include protection from criminal acts occurring off the defendant business' property.

*Chowbay v. Davis*, M2001-01838-COA-R3-CV, 2002 WL 1389604, at *4 (Tenn. Ct. App. June 27, 2002).

Similarly, here, it is undisputed that the shooting occurred on a public street rather than Defendants' property. In his deposition testimony, Plaintiff admitted that, during the events leading up to the shooting, he was by his car, which was parked on Delmar Avenue. As to the shooting itself, Plaintiff admitted, "I was shot right there on Delmar." As illustrated by an exhibit offered by Defendants, Delmar Avenue is a public street with no access controls on either side, and, despite Plaintiff's assertion that Delmar Avenue is part of Defendants' property, he admitted that there are in fact no such access controls.[2] Moreover, the exhibit—the recorded plat for Defendants' apartment complex—contains the following notation: "ALL STREET RIGHTS-OF-WAY ARE PUBLICLY DEDICATED UNLESS NOTED OTHERWISE."

Plaintiff, although seemingly admitting that the shooting occurred on public property as opposed to property under the exclusive possession and control of Defendants, asserts that "[t]here is no magic in where the plaintiff is physically located when a tort occurs." Plaintiff cites to the Tennessee Supreme Court's *Hale v. Ostrow* decision to support his assertion that a defendant property owner can be found liable for a tort that occurs off the defendant's property. There, the plaintiff walked off the sidewalk to avoid overgrown bushes emanating from the defendants' property and, in doing so, tripped and broke her hip. *Hale v. Ostrow*, 166 S.W.3d 713, 715-16 (Tenn. 2005). The Supreme Court held that the property owners owed a duty of care to plaintiff, as a passerby, to ensure that the sidewalk was not obstructed by overgrown bushes and was passable, noting that the foreseeability and gravity of potential harm clearly outweighed the burden to prevent the harm. *Id.* at 717. Plaintiff's contention, however, is misplaced. The premises owners' duty in *Hale* stemmed from overgrown bushes emanating from the premises owners' property; here, Plaintiff was shot by Ms. Jones, a third-party, who bore no connection to Defendants' property. The *Akridge* and *Chowbay* decisions, cited above, both declined to extend the duty owed by a premises owner to include protection from criminal acts occurring off a defendant premises owner's property. *See Akridge*, 2015 WL 97946, at *5; *Chowbay*, 2002 WL 1389604, at *4. Because we likewise find there was no duty owed by the Defendants to the Plaintiff in this case, we do the same.

As stated above, although the trial court granted summary judgment on the basis that Defendants lacked notice of and the opportunity to prevent the shooting, this Court is permitted to affirm a grant of summary judgment on grounds different from those cited by the trial court. *See Hill*, 73 S.W.3d at 136. Therefore, albeit for different reasons, we affirm the trial court's grant of summary judgment.

---

[2] When asked whether Delmar Avenue required a key card, a code, or a similar means to gain access, Plaintiff responded in the negative.

**CONCLUSION**

For the foregoing reasons, the trial court's entry of summary judgment in favor of Defendants is affirmed.

_____

ARNOLD B. GOLDIN, JUDGE